Matter of Adams Machinery, Inc.: Home Savings Bank, Appellant, v. Moskowitz, Receiver, Respondent.

*February 7—March 5, 1963.*

For the appellant there was a brief by *Glassner, Clancy & Glassner* of Milwaukee, and oral argument by *William E. Glassner, Jr.,* and *Lawrence Clancy.*

For the respondent there was a brief by *Herman E. Friedrich,* attorney, and *Michael, Best & Friedrich* and *Frank C. DeGuire* of counsel, all of Milwaukee, and oral argument by *Mr. Herman E. Friedrich* and *Mr. DeGuire.*

HALLOWS, J. The question is whether the chattel mortgage covering these three pieces of machinery was a mortgage of a stock of goods within the purview of sec. 241.14, Stats. The receiver contends if specific personal property is in fact part of a stock of goods, the chattel mortgage thereon is a mortgage of a stock of goods regardless of how the property is described or designated in the mortgage and if the mortgagor is permitted to sell the property and apply the proceeds on the debt, sec. 241.14 applies.

All chattel mortgages of personal property are required by sec. 241.10, Stats., to be filed with the register of deeds of the county in which such personal property is situated,

and when so filed are valid and binding upon all persons. Sec. 241.10 (3). Additional statutory requirements may apply to mortgages which cover a stock of goods as distinguished from chattel mortgages covering specific personal property or personal property not constituting any part of a stock of goods. The mortgagor of a stock of goods of which he is in possession and from which he is permitted to make sales and apply the proceeds upon the indebtedness must from time to time, not exceeding four-month intervals, file verified statements with the register of deeds giving the aggregate amount of sales from the mortgaged property, the amount of the proceeds applied on the mortgage debt, and the total valuation of the stock of goods added to the original stock since the date of the mortgage or the last statement. Sec. 241.14. Failure to file the statements results in the mortgage becoming immediately due and payable and in the cessation or termination of the lien upon the stock of goods at the expiration of thirty days excepting as between the mortgagor and the mortgagee. Sec. 241.14 (2).

A mortgage of a stock of goods need not expressly permit sales and the application of the proceeds by the mortgagor to the mortgage debt to call for compliance with sec. 241.14, Stats. It is sufficient if such conduct is permitted, acquiesced in, or agreed to by the parties. *Ross v. State Bank of Trego* (1929), 198 Wis. 335, 224 N. W. 114; *Morley-Murphy Co. v. Jodar* (1936), 220 Wis. 302, 264 N. W. 926. The separate agreement outside of the mortgage found by the trial court to exist was sufficient to make sec. 241.14 applicable if the chattel mortgage was a mortgage of a stock of goods or of a stock-in-trade.

Nowhere in ch. 241, Stats., is a chattel mortgage defined, much less a chattel mortgage of a stock of goods. We construe sec. 241.14 (1), Stats., as applying only to a mortgage which by its terms covers a stock of goods or a

stock-in-trade as a class. Such a mortgage is general and its lien is in the nature of a floating incumbrance varying in extent as the stock of goods increases or diminishes. It is not the nature or intention of such a mortgage to describe the individual items separately so they may be identified individually. Nor is it necessary to identify each particular item of the stock of goods because generally in such a mortgage the hypothecated property is to be sold in the ordinary course of business.

The contents of the verified statements required by sec. 241.14 (1), Stats., imply the personal property is dealt with or described as a class in the mortgage. These statements do not give information of what individual items are and what items are not covered by the lien but give information only of the aggregate amount of the sales made from the stock of goods, the amount applied to the mortgage debt, and the total value of the stock added. By sec. 241.14 (2), a mortgage of a stock of goods may be a valid lien upon after-acquired stock if the mortgage shall recite it is intended to apply and cover such additions. Obviously, after-acquired stock cannot be described in a mortgage excepting by general terms of a class. Individual identification of non-existent goods is impossible.

These sections read together contemplate a mortgage upon property as a class constituting stock in goods and are inapplicable both in their purpose and content to a chattel mortgage of specific personal property described as such in the mortgage even though such property may in fact be part of the mortgagor's goods in stock or stock-in-trade. In the instant case, the three pieces of road machinery were specifically mortgaged and two pieces of machinery released from the lien under sec. 241.17, Stats. No purpose would be served in requiring verified statements to be filed in writing showing the amount of sales made of three pieces of machinery, the amount applied to the mortgage debt, and

the total valuation of property added to the mortgage since the date of the mortgage or the last statement. Such a requirement was aimed to provide some regulative measure respecting mortgages on merchandise stock. *In re Thorson Bros.* (D. C. Wis. 1913), 209 Fed. 961.

The bank's contention the chattel mortgage cannot be a mortgage on stock of goods because the mortgage did not cover after-acquired property is without merit. Such element is not a distinguishing essential of a mortgage of a stock of goods. Cohen and Gerber, Mortgages of Merchandise, 39 Columbia Law Review (1939), 1338, 1350. Nor can we agree with the contention of the receiver that every chattel mortgage on personal property which constitutes a stock of goods is a chattel mortgage of the stock of goods. To be a mortgage of a stock of goods, the mortgage must deal with the property mortgaged as a class.

The distinction between a chattel mortgage on specific property and one on a stock of goods permeates the historical development of the chattel mortgage as a security device. From a secured creditor's point of view, a chattel mortgage on a stock of goods was an ugly duckling which had great difficulty becoming a swan. Skilton, Chattel Security Problems: Use of Personal Property as Security in Business Financing, Seminar for Wisconsin Lawyers, 1957; Mortgages on Stock-in-Trade, 1947 Wisconsin Law Review, 453; Bunn, Financing Dealers: Existing Wisconsin Law and the Uniform Code, 37 Marquette Law Review (1953–1954), 197; The After-Acquired Property Clause, 87 University of Pennsylvania Law Review (1939), 635; Gilmore and Axelrod, Chattel Security, 57 Yale Law Journal (1948), 517, 534–537; 1 Jones, Chattel Mortgages and Conditional Sales (6th ed.), pp. 228, 229, sec. 138, and 2 Jones, Id., pp. 142–144, sec. 409, and p. 159, sec. 415. The common law had no difficulty with the validity of a chattel mortgage on specific personal property. However, when the security

device was used to deal with a stock of goods of a merchant, difficulties arose. A chattel mortgage of a stock of goods in the possession of a merchant from which he could make sales in the ordinary course of business and apply the proceeds in part to his own use and in part on the mortgage debt was viewed traditionally as a device to defraud, hinder, or delay creditors. *Place v. Langworthy* (1861), 13 Wis. 704 (*629). It did not matter whether the mortgage expressly gave the mortgagor the power to sell and so use the proceeds if, in fact, such power existed. *Steinart v. Deuster* (1868), 23 Wis. 136 (oral contract); *Hunter v. Bosworth* (1878), 43 Wis. 583 (separate contract); *Anderson v. Patterson* (1885), 64 Wis. 557, 25 N. W. 541 (implied contract). Taking possession of a stock of goods by the mortgagee of such a mortgage would not purge the mortgage of its fraudulent character. *Blakeslee v. Rossman* (1877), 43 Wis. 116. A chattel mortgage of a stock of goods was valid, however, although the mortgagor remained in possession with authority to sell providing all the proceeds were to be and were applied against the mortgage debt. *Roundy v. Converse* (1888), 71 Wis. 524, 37 N. W. 811.

In 1887 the first act on the subject recognized the validity of such a mortgage and required the mortgagor to file periodic statements of sales, the amount applied on the mortgage and the value of the additions. Ch. 241, Laws of 1887. Such a mortgage could still be challenged if the mortgagor was entitled to apply the proceeds of the sale of the stock to his personal use or to general business expenses. *Durr v. Wildish* (1900), 108 Wis. 401, 84 N. W. 437; *In re Thorson Bros., supra; Ross v. State Bank of Trego, supra; Vanden Wymelenberg v. Badger Furnace Co.* (1936), 220 Wis. 473, 265 N. W. 718. However, in 1959, sec. 241.14 (3), Stats., was created and the mortgagor was not required to apply the full proceeds of the sale of the stock on the indebtedness providing the mortgage

required periodic payments at intervals not exceeding four months. Ch. 422, Laws of 1959.

Early attacks on chattel mortgages of a stock of goods also questioned the concept that a chattel mortgage could be a continuing floating lien on a class of goods with such changing elements as after-acquired stock-in-trade. *Chynoweth v. Tenney* (1860), 10 Wis. 341 (*397) (stock of harnesses, whips, and saddles); *Hunter v. Bosworth, supra* (stock of goods of a drugstore). In 1895 the statutes provided a mortgage could be a valid lien on property added to the mortgaged stock of goods. Ch. 11, Laws of 1895. But by ch. 575, Laws of 1913, the statute was amended limiting the validity of the lien on after-acquired property to those cases where the mortgage expressly so provided. This is still the law today by sec. 241.14 (2), Stats. This history implies the statutes were intended to apply to general mortgages involving a class of property as such.

The trial court relied on *Vanden Wymelenberg v. Badger Furnace Co., supra,* which involved a mortgage on furnaces and furnace equipment of a retail hardware dealer for the proposition a mortgage on a stock of goods need not be on the entire stock of goods. This is undoubtedly true. Likewise a part of a stock of goods may be released from a mortgage under sec. 241.17, Stats. But it does not follow that every mortgage of personal property which constitutes part of a stock of goods is therefore a chattel mortgage of that class. The bank relies on *Southern Wisconsin Acceptance Co. v. Paull* (1927), 192 Wis. 548, 213 N. W. 317, which the receiver distinguishes on the ground the mortgage was on automobiles not constituting a stock-in-trade. This fact is not clear in the opinion but the briefs in the case show the Wisconsin Orange Crush Bottling Company, the mortgagor, besides conducting its bottling business was also engaged in the selling of automobiles for profit. The mortgagor borrowed money from the acceptance

company secured by a chattel mortgage on three automobiles and sometime later placed the cars in the possession of a garage for the purpose of sale. The acceptance company knew of this arrangement. The acceptance company in a replevin suit was unsuccessful in recovering one of the automobiles from a *bona fide* purchaser on the ground that when a chattel mortgagee authorizes the mortgagor to sell mortgaged property he waives his lien against the purchaser. The court stated its determination was not affected by sec. 241.14 because ". . . neither by the terms of the chattel mortgage nor by the conduct of the parties were the three automobiles covered by the chattel mortgage treated as a stock of goods." Although the result of the case would have been the same, this court recognized a distinction between a chattel mortgage on separately described automobiles as such and a mortgage of part of a stock of goods.

The receiver argues the interpretation which allows property which in fact is part of a stock of goods to be mortgaged specifically rather than necessarily as a mortgage on a stock of goods renders the statute meaningless. We think not. The receiver's argument, carried to its logical conclusion, would require a merchant mortgaging one item of his stock-in-trade specifically to comply with the provisions of sec. 241.14, Stats., although compliance with those requirements would obviously be useless and meaningless to the mortgagor's creditors.

By sec. 241.10 (1) and (3), Stats., the chattel mortgage in question was a valid mortgage and binding on all persons when filed and sec. 241.14 had no application. Nor did the collateral power of sale and the right to partial releases invalidate the lien of the mortgage as against the receiver or the creditors of the mortgagor but only against *bona fide* purchasers. *Southern Wisconsin Acceptance Co. v. Paull, supra; Bernhagen v. Marathon Finance Corp.* (1933), 212

Wis. 495, 250 N. W. 410; *Kramer v. Burlage* (1940), 234 Wis. 538, 291 N. W. 766; *Bank of Ashippun v. Ells* (1957), 274 Wis. 530, 80 N. W. (2d) 357.

*By the Court.*—The order is reversed, with directions to enter an order sustaining the validity of the lien of the chattel mortgage against the receiver.