PETER FAIRWEATHER v. OLE NELSON and Another.

June 9, 1899.

Nos. 11,633—(120).

**Chattel Mortgage—Sale of Property—Lien upon Proceeds of Sale.**

When the mortgagor, with the consent of the mortgagee, sells the personal property covered by the mortgage, the lien of the mortgage is discharged; and in such case it would only be by virtue of some agreement between the parties that the property should be sold in the name of the mortgagee, or that the property or money received in exchange should belong to him, or be applied on the mortgage debt, or subject to the lien of the mortgage in place of the property sold, that the mortgagee would have any lien upon or right to it. Evidence considered, and *held* that it did not justify the court in directing a verdict for the plaintiff.

Action in justice court to recover possession of a span of horses or to recover $100, the value thereof, in case a return could not be had. Judgment was rendered in favor of plaintiff, from which defendants appealed to the district court for Marshall county. The case was there tried before Ives, J., who directed a verdict in favor of plaintiff. From an order denying his alternative motion for judgment notwithstanding the verdict, or for a new trial, defendant Tiedt appealed. Reversed.

*H. Steenerson, A. Grindeland* and *W. E. Rowe,* for appellant.

*E. M. Stanton* and *A. A. Miller,* for respondent.

MITCHELL, J.[1]

This was an action to recover possession of a span of horses from the defendant Tiedt, whom we shall hereafter call the "defendant." Both parties claim under Nelson. When the evidence closed, the court directed a verdict for the plaintiff, and from an order denying a new trial the defendant appealed.

The evidence disclosed that in 1893 Nelson executed to plaintiff a chattel mortgage on a span of mules; that in June, 1897, Nelson, with the consent of the plaintiff, traded the mules for the span of horses in controversy, which remained in Nelson's possession until he sold and delivered them to the defendant, on the 16th of the following October. The evidence at least tends to show that the trade was not made in plaintiff's name, and that there was no agreement between him and Nelson that it should be; that there was no agreement or understanding between them that Nelson should execute to plaintiff a mortgage on the horses, or that they should be applied on the mortgage debt, or that they should be subject to the lien of plaintiff's mortgage in place of the mules. If such were the facts, the unincumbered title to the horses would be in Nelson, and plaintiff would have no lien upon them; neither would Nelson be a trustee of the title for him. The mules having been sold with plaintiff's consent, the lien of his mortgage on them was discharged; and in such case it would only be by virtue of some agreement between the mortgagor and mortgagee that the property should be sold in the name of the latter, or that the property or money received in exchange should be the mortgagee's, or be applied on the mortgage debt, or subjected to the lien of the mortgage, as a substitute for the property sold, that the mortgagee would have any lien upon or right to it.

The plaintiff introduced evidence tending to show that during the time the mules were in Nelson's possession, between June and October, he, on several occasions, stated to third parties that the mules belonged to the plaintiff. If the horses were not the plaintiff's property the mere fact that Nelson said they were would not make them so. These admissions might be evidence tending to prove

[1] BUCK, J., absent, took no part.

that there was some agreement between the parties by which the horses were the property of the plaintiff, but they were not conclusive, especially in view of the other evidence in the case. Nelson, impliedly, at least, denies that he made these statements; his version of the matter being that, in view of the fact that the horses were received in exchange for property covered by the mortgage, he refrained from mortgaging them to any one else, and intended to give plaintiff a mortgage upon them when they had made a settlement, but that this intention was never carried into execution.

Subsequently plaintiff brought suit, and recovered judgment against Nelson, and levied on all his nonexempt property. At first, Nelson claimed the horses in controversy as his exempt team, but a day or two afterwards changed his mind, and claimed as his exemption another team, upon which defendant held a chattel mortgage, and which, subject to his mortgage, plaintiff had included in his levy. Plaintiff introduced evidence tending to prove that he released his levy on this team in consideration of Nelson's verbal promise to turn over and surrender possession of the team in controversy to the plaintiff, as his property. Nelson admitted that an arrangement substantially as stated was contemplated, but that it was never consummated, because of the inability of the parties to agree on the amount for which he should be credited on account of the horses. The evidence is undisputed that the parties never did agree on the amount; that plaintiff offered to credit Nelson with $120, which the latter refused to accept, and immediately went and sold and delivered the horses to the defendant for $150, which the latter credited on a note which he held against Nelson.

Assuming that plaintiff had a legal claim on the horses, the evidence is not conclusive that defendant had notice of the fact when he purchased. Whether the evidence would have supported a verdict for the plaintiff, we need not consider. It was certainly not conclusive, so as to require such a verdict, and hence the court erred in directing one.

Order reversed, and a new trial granted.